## THE STATE v. MOREA.

1. When a juror has once been sworn in chief, he cannot be challenged or set aside from the jury, for any cause which existed at the time of his being put on the prisoner.
2. When an opinion is formed by a juror (but never expressed) on mere rumor this is no cause of challenge.
3. An opinion formed from a conversation held with a physician, who is not a witness to any of the facts of the prosecution, but who in the course of the trial is called as a witness, to give his professional opinion, does not disqualify a juror,
4. The Supreme Court is not precluded from examining a question referred to it as novel and difficult, because the action of the Circuit Court on it is purely discretionary.
5. An infant under the age of seven years, may be sworn as a witness in criminal prosecutions, if it has a sufficient knowledge of the nature and consequences of an oath.
6. It is the Court, and not the Judge as an individual, which is to determine the competency of an infant witness; and therefore the examination, as to the competency of the witness, must be made at the trial, and in the presence of the prisoner and his counsel.   To admit such a witness upon a private examination by the Judge, is erroneous.
7. In a prosecution for murder, if the death of the deceased was accelerated by the violence of the prisoner, his guilt is not extenuated, because death might, and probably would, have been the result of a disease, with which the deceased was afflicted, at the time of the violence.
8. When the evidence is not stated, in the reservation of a question for the decision of the Supreme Court, and in the absence of any request to modify a charge, the charge will be considered as warranted by the facts, and its correctness in point of law will alone be considered.

Questions referred by the Circuit Court of Cherokee County.

THE prisoner was indicted for murder. The facts of the case, so far as applicable to the questions referred, are these :

When the jury was about to be sworn, one Weakly was called as a juror, and answered on his *voir dire*, that he had formed, but not expressed an opinion, as to the guilt or the innocence of the prisoner. This opinion was not formed from conversation with any of the witnesses in the case, nor did the witness know who the witnesses were. A list of the witnesses endorsed on the indictment, was then read to him, but he answered

that he knew none of them.   Not being challenged, this indivi-
dual was sworn as one of the jury.   Afterwards, in the pro-
gress of the trial, one Dr. Lee was called as a witness, and ex-
amined on behalf of the State.   When Lee's name was called,
the juror, Weakly, disclosed, that the opinion spoken of by him,
was formed from a conversation with Lee, not knowing how-
ever, when he was sworn, that Lee was one of the witnesses.
The prisoner's counsel then, before the testimony of Lee was
given to the jury, objected to the competency of the juror,
Weakly, and moved the Court to substitute another in his stead.
The counsel for the State resisted this motion, on the ground
that Lee was not introduced to prove any substantive fact, but
merely to give his opinion as a physician—he having no knowl-
edge of the facts of the case, except from rumor ; and also, on
the ground that the objection to the juror came too late.   The
motion was overruled.

The prosecuting counsel then offered a little girl as a wit-
ness, who was the child of the prisoner ; she was objected to,
as being incompetent, on the ground of infancy, and for the want
of sufficient discretion.   When interrogated, if she knew the
nature of the obligation of an oath, she replied, she did not
know.   When asked her age, she was unable to tell how old
she was.   The Court, under these circumstances, determined
the witness to be incompetent ; but afterwards, on a private ex-
amination, admitted her to give evidence, she not having been
instructed by the Court, as to the future consequences of swear-
ing to a lie, or without giving proper answers to the foregoing
interrogatories propounded to her.

After the evidence was closed, the prisoner's counsel asked
the Court to charge the jury, if they believed the deceased died
of the fever, and not by the violence inflicted by the prisoner,
although the violence may have accelerated his death, that
then the prisoner should be acquitted.

This the Court refused, and instructed the jury, if they be-
lieved that the violence inflicted by the prisoner accelerated the
death, although the deceased may have died of the fever, yet,
the prisoner was guilty of murder.

The prisoner was convicted and sentenced, but all the ques-
tions arising out of the facts as stated, were reserved, as novel
and difficult, for the decision of the Supreme Court.

MOORE, with whom was HOPKINS, for the prisoner.

The ATTORNEY GENERAL, for the State.

GOLDTHWAITE, J:—1. It would have been irregular to stop the trial, for the purpose of substituting a juror in the place of Weakly, even if the opinion formed by him, had ever been expressed. The prisoner was not deceived; for he knew from the previous examination of the juror, that some opinion had been formed by him, and might have challenged peremptorily. Instead of doing this, he accepts the juror, who is sworn in chief. All the authorities concur in the opinion, that when a juror is once sworn, he cannot be afterwards challenged for a cause which existed at the time when he was put on the prisoner. (Chitty's Criminal Law, 444, and cases there cited ; Yelverton 24 ; Williams v. The State, 3 Stew. 454.)

2. 3. If this matter had been disclosed at the time of swearing the juror, it would not have availed the prisoner as a cause of challenge. The opinion, whether in favor of, or against the prisoner, was never expressed, and for this reason alone, it may be questionable, whether either the State or the prisoner, could challenge for cause. But which ever way the bias of the juror may have been, it was clearly formed from mere rumor, because Lee, from whom his information was derived, had no knowledge of the facts attending the homicide, and when called as a witness, was to give testimony of his opinion as a physician, upon the facts detailed by others.

4. Some doubt seems to have been heretofore felt, whether this Court is not precluded from the revision of a question, when of such a description, that the action of the Circuit Court upon it, must be purely a matter of discretion.

The only limitation provided by the statute is, that the question referred, shall be novel and difficult. (Aikin's Digest, 257, s. 16.) Previous to this enactment, the Circuit Courts, at their discretion, could respite the judgment in any criminal case, on *a point reserved, motion in arrest of judgment, or for a new trial*, for the consideration of the Supreme Court. (Digest, 243, s. 22.)

The Circuit Court unquestionably has the right to require the opinion of this Court on any question, whether the judgment to

be exercised by it is discretionary or otherwise, which arises in a criminal case, and which is considered by the presiding Judge *as novel and difficult.*

It is therefore, not very important to ascertain, whether the admission or rejection of an infant witness, is a matter of discretion, as distinguishable from a matter of right, and thus resting solely with the Judge trying the cause ; but if it is conceded to be so, the proper exercise of that discretion, is one of the matters referred in this case. It may not be improper to add, that we incline strongly to the impression, that the admission or rejection of all evidence, is not a matter of mere discretion, but rather, that all such questions involve rights which must be ascertained, and determined, by fixed principles, and by the rules of law. We are not aware of any adjudicated case, which tends to support Mr. Starkie in the contrary opinion, which is stated in his work on evidence, 2 vol. 393.

5. We are not certain that the reference made in this case, is as precise as it might have been; but we understand the main question to be, whether the Circuit Court was authorized to arrive at a conclusion, respecting the admission or rejection of the infant witness, from a *private examination, after a public examination in Court* had resulted in the exclusion of the witness, in consequence of an apparent defect of knowledge, with respect to the obligations of an oath.

In Lord Hale's time, it was common to examine children of tender years, without swearing them. (1 Hale, P. C. 634.) This practice was overturned in 1779, in Brazier's case, when the Judges were unanimously of the opinion, that no testimony whatever, could be legally received, except when given on oath; and that an infant, though under the age of seven years, might be sworn in a criminal prosecution, provided such infant appeared, on a strict examination, by the Court, to possess a sufficient knowledge of the nature and consequences of an oath ; for there is no precise rule as to the age within which infants are excluded from giving evidence, but their admissibility depends on the sense and reason they entertain of the danger and impiety of falsehood, which is to be collected from their answers to questions propounded to them by the Court; but if

they are found incompetent they, cannot be received. (Rex v. Brazier, Leach 346; Buller's N. P. 393.)

6. This case is a most satisfactory exposition of the law, and establishes that the Court, and not the judge, as an individual, is to be satisfied of the competency of the infant offered as a witness. It may be objected, it is scarcely possible, that an infant of such tender years, can be capable of satisfactorily answering questions amidst the bustle and confusion of a Court-house ; but certainly the consequences would be alarming, if the admission of such a witness might be effected through the medium of a private examination; and more so, when one made in public had proved to be unsatisfactory.

We do not wish to be understood as intimating, that the precise interrogatories used in this case were necessary, or even, that only such would be proper. The competency of such witnesses depends on the sense and reason they entertain of the danger and impiety of falsehood; and if such a sense can be collected from their answers they should be admitted, otherwise rejected.

7. The remaining question to be considered, is that which relates to the propriety of the charge, which was refused as well as that which was given.

It is conceded by the counsel of the prisoner, and properly so in our opinion, that if the death was accelerated by the violence of the prisoner, his guilt is not extenuated, although death might be, and probably would have been the result of the disease, which then afflicted the deceased.

8. But it is insisted that the Circuit Court, was wrong in assuming, that the prisoner was guilty of murder, when the crime, in the consideration of the jury, under the facts in evidence, may have been but manslaughter.

The evidence on which the charge was asked, is not stated but we must presume, from the absence of any request by the prisoner to modify the instructions, that they were warranted by the facts, and that their correctness in point of law was alone disputed.

The charge given to the jury, seems to be nothing more than a response to that which was requested, but refused.

We can perceive no other error in the decision of the several questions referred, than the admission of the infant without a satisfactory examination in open Court.

In consequence of the improper admission of this witness, the sentence must be vacated and the judgment reversed.

The prisoner to be kept in custody to await another trial, unless discharged by due course of law.