## McALLISTER *vs.* THE STATE.

1. If the court in a criminal case improperly sets aside a competent juror at the instance of the accused, it is an error, of which he cannot be heard to complain.

2. Where insanity is set up as a defence to an indictment, evidence of the state of the prisoner's mind at the time of the trial is admissible for him, as tending to show his true mental condition when the act was committed.

3. The opinions of medical men, founded on facts detailed by other witnesses or on their personal observation of the accused, are admissible to prove insanity. Such opinions, however, are not conclusive, but are to be weighed by the jury as other testimony.

4. To render the defence of insanity available, the evidence should be such as to satisfy the jury that, at the time the act was done, the accused was not conscious that he was committing an offence against the law of God or man.

5. Where death is caused by a wound received, the person who inflicts it is responsible for its consequences, although the deceased might have recovered by the exercise of more care and prudence.

Error to the Circuit Court of Barbour. Tried before the Hon. Thos. A. Walker.

BUFORD, for the plaintiff.

McAllister v. The State.

ATTORNEY GENERAL, for the State:

I. The mode of drawing the jury, for the trial of capital cases, as pointed out in the 54th section, 10th ch. Penal Code, is merely directory.—The State v. Brook, 9 Ala. 17.

1. The counsel for defendant objected to the name of Reeves (one of the jurors summoned to try the case, and which was lost from the hat) being returned to the hat, and the objection was sustained. If any error has intervened, it was at his instance, and he cannot take advantage of it.—McMillan v. Wallace, 3 Stew. 185.

2. No injury resulted to the prisoner on account of Reeves' name being lost for a time from the box, for he had not exhausted his challenges when the jury was completed, and the presumption is that a fair and unexceptionable jury was obtained, and when that is the case the law presumes no injury to either party. Tatum v. Young, 1 Port. 309; United States v. Cornell, 2 Mason 91; The State v. Marshall, a slave, 8 Ala. 306.

II. The testimony of the physician Cleckley, proposed on the part of the defence, was objectionable.

1. The length of time elapsing between the commission of the offence and the trial was so great as to afford no indication of the state of the prisoner's mind *at the time* of the homicide.— Dickinson v. Barber, 9 Mass. 227.

2. This testimony was not proposed to show the state of the defendant's mind *at the time* of the commission of the crime, but expressly to show, in the opinion of the witness, that the prisoner "had *then* an insane eye and an insane appearance." McLean v. The State, 16 Ala. 680.

3. The evidence proposed was not based on any facts or circumstances testified to by the physician or any other witness, and therefore inadmissible.—Clark v. The State, 12 Ohio, 483; Dickinson v. Barber, *supra;* 1 Greenl. Ev. § 440.

III. The charge requested by the prisoner was properly refused:

1. It was not necessary that the wound should have been the immediate cause of the death.—1 Russ. on Cri. 428; 1 Hale P. C. 428; Com. v. Green, 1 Ashm. 301.

2. The charge asked was abstract.—Pierson v. The State, 12 Ala. 149.

DARGAN, C. J.—The plaintiff in error was tried and convicted in the Circuit Court of Barbour of the murder of Samuel Moreland.   On the trial a bill of exceptions was taken to the ruling of the court, which shows that after the original list of jurors was exhausted, and the jury not being complete, it was announced that the name of one Reeves, included in the list that had been served on the prisoner, had not been drawn from the hat and could not be found in it.   The name was subsequently found in another place, and the clerk stated that they had been particular in putting all the names in the hat, and thought it must have fallen out by accident.   The court proposed to the prisoner to allow the name then to be put in the hat and drawn, to which by his counsel he objected.   The solicitor then moved the court to place the name in the hat and draw the same as the name of a juror, to which the defendant also objected, and his objection was sustained by the court.   The court then proceeded to complete the jury according to the statute.

In the case of The State v. Marshall, 8 Ala. 306, it was held that the court may in its discretion reject one who is an unfit person to set as a juror, although not disqualified by law, and if the prisoner be tried by an impartial jury he has sustained no injury.   Whether the court may set aside a competent juror against the wishes of the prisoner, without committing an error, it is not necessary to decide; but if the prisoner object to the juror, whether his objection is well founded or not, and the court sustains the objection, certainly he cannot be heard to complain that the court erred.   If there was error, it intervened at the prisoner's request and for his benefit.

It was shown that for some years prior to the commission of the offence the defendant's demeanor was strange and his general appearance wild, and there was other evidence tending to show that the defendant was subject to sudden fits resembling insanity.   The prisoner's counsel then offered a physician for the purpose of showing that it was his opinion that the prisoner then had an insane eye and an insane appearance.   This opinion was formed from the appearance of the prisoner at the time of the trial.   To this testimony thus offered the State objected, and the objection was sustained.   We cannot perceive on what principle the evidence was rejected.   It is true that the evidence must

show that at the time the act was done the mental condition of the deceased was such that he could not be held criminally responsible for his acts—he must have then been insane; but we presume there can be no doubt that it is competent to go into an inquiry of the mental condition of the prisoner both before and after the commission of the act. This is the rule we announced in the case of McLean v. The State, 16 Ala. 672, and we are satisfied that it is as well sustained by authority as it is by reason. It is laid down by Mr. Greenleaf, that evidence of the state or condition of the mind, both before and after the act is done, is admissible evidence—2d vol. § 371; (see also Grant v. Thompson, 4 Conn. 203; Norwood v. Marrow, 4 Dev. & Batt. 442;) and I cannot find it laid down in any of the common law writers, that testimony tending to show insanity after the commission of the act should be rejected as illegal testimony. Nor could it be rejected on the ground that it was opinion merely, for the rule we think is entirely well settled that the opinion of medical men in reference to the diseased condition of the mind, founded on the facts detailed by other witnesses or from their personal observation of the party alleged to be insane, is admissible evidence.—Roscoe's Crim. Ev. 137; Wharton's Crim. Law, 15; The Commonwealth v. Rogers, 7 Metc. 500; Clark v. The State, 12 Ohio, 483; The State v. Brynea, 5 Ala. 241. We presume that the true reason why the evidence was rejected, was, that in the opinion of the court it was wholly insufficient to prove the defence set up by the prisoner. But it must be borne in mind that the duty of the court is to decide on the legality and admissibility of the evidence, and not its sufficiency. The sufficiency of the proof is a matter exclusively for the jury, and it will not be improper for the court to instruct them as to the degree of certainty that the evidence should produce upon their minds. When the plea of insanity is interposed to protect one from the legal consequences of an act which amounts to a crime, to render the defence available, the evidence must be such as to convince the minds of the jury that at the time the act was done the accused was not conscious that in doing the particular act he was committing a crime against the laws of God and his country. If he knew right from wrong, and knew that he was violating the law, he is then guilty, for it is this conscious knowledge, connected with the act, that consti-

tutes the crime.' This appears to me to be the result of all the cases upon this subject.—See Winslow on Insanity, 2 to 10; Roscoe's Crim. Ev. 778, 786. If, therefore, the accused insists that he was insane, he must adduce proof that will satisfy the jury that the act was not connected with the knowledge of its criminality, and this proof should be clear and satisfactory. It therefore follows that previous or subsequent insanity is no defence unless it existed at the time the act was done. Yet we cannot reject evidence to prove insanity either before or after the act, for such evidence is proper to be weighed by the jury in coming to a conclusion whether insanity existed at the time the act was done. The opinion too of medical men is by no means binding on the jury, even when they have had the most ample opportunity to observe the character and phenomena of this disease. Indeed some of the most eminent judges have rejected the mere opinion of physicians altogether. In the trial of the Earl of Ferrers, Lord Hardwicke said, "You may ask the witness what are the indications of insanity, but you shall not transfer the witness to the jury box and ask his opinion whether insanity existed or not." But it is now settled that the opinions of medical men may be admitted as evidence to be weighed by the jury; but if the whole evidence does not satisfy their minds that insanity existed at the time the act was done, they should find the prisoner guilty, although the medical witnesses were of the opinion that the prisoner was insane.

The physician who attended the deceased stated that the wound inflicted by the prisoner at one time partially healed, and he thought the deceased recovering, and that he probably would have recovered had not a fresh hœmorrhage occurred, which in his opinion resulted from some imprudent exertion. But there was no other evidence that the deceased made any imprudent exertion. The witness farther stated that the wound caused the death. On this evidence the prisoner requested the court to charge the jury that if they believed that the deceased would have recovered but for some improvident act of his own, or from some other cause over which the prisoner had no control, then they could not find him guilty of murder. This charge the court refused to give. The law on this subject is thus laid down by Lord Hale: "If a man gives another a stroke which, it may be, is not in itself so mortal but that, with good care, he might

be cured, yet if he dies of this wound within the year and day, it is homicide or murder, as the case is, and so it hath been always ruled.   But if the wound or hurt be not mortal, but with ill applications by the party or those about him of unwholesome salves or medicines, the party dies, if it can clearly appear that this medicine, and not the wound, was the cause of his death, it seems it is not homicide ; but then that must appear clearly and certainly to be so.   But if a man receives a wound which is not in itself mortal, but either for want of helpful applications or neglect thereof, it turns to a gangrene or a fever, and that gangrene or fever be the immediate cause of his death, yet this is murder or manslaughter in him that gave the stroke or wound, for that wound, though it were not the immediate cause of his death, yet if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is *causa causati.*"—1 Hale's Pl. of the Cr. 428.   Nor will neglect or disorder in the person who receives the wound excuse the person who gave it.   Thus it was resolved that if one receives a wound who neglects to cure it, but is disorderly and does not observe that rule that a wounded person should, if he die it is murder or manslaughter as the case may be, because if he had not received the wound he had not died.—Rew's case, Kel. 26 ; Roscoe's Crim. Ev. 574 ; 1 Russ. on Cr. 529 ; The Com. v. Greene, 1 Ashm. 289.   If the death be owing truly to the wound, it signifies not that the deceased would have recovered under more favorable circumstances, or with more prudent care; the death being the result of the wound, the party inflicting it must be held responsible for it.   This is the settled rule of law, and it shows that the court did not err in refusing to give the charge requested.

For the error we have pointed out in rejecting the evidence offered, we must reverse the judgment, and the cause must be remanded for another trial.