The opinion of tlie Court was delivered by
Toed, J.
The defendaut was indicted for the murder of Mike Barnes, and convicted of manslaughter, and sentenced to five years’ imprisonment in the penitentiary, and from this sentence has appealed.
There is no assignment of errors filed in this Court. No appearance by counsel, either by brief or oral argument. In tlie absence of such, we do not deem it necessary to discuss every point raised- by the bills of exceptions found in the record, but after thoroughly examining the record, shall confine our attention to such questions only as we deem material to the determination of the case.
The only ones deserving consideration relate, first, to the refusal of tlie Judge to charge the jury "that, if they believed from the evidence that tlie deceased could have survived the blows inflicted, if he had received proper medical treatment, this creates a reasonable doubt and tlie jury must acquit,”
The Judge’s refusal to so charge was proper. In the first place, to have given this charge in the words quoted, would have involved the statement of the Judge that blows had been inflicted upon the deceased, which would have been unwarrantable comment on the evidence *396 touching' a very material issue, and besides, would have charged, by implication, that the deceased had not received proper medical treatment. Bnt apart from this, it was a correct enunciation of the law on the subject.
In the case of tho State vs. Scott, 12 A. 274, tho Judge was asked to charge the jury: “ If the wound was not necessarily mortal, but by ill treatment became so, they will find the defendant not guilty.” It was held that Ms refusal to.so charge was proper. And in so ruling, the Court used this language: “ If a person dies of a wound inflicted with a murderous intent, whose life might have been saved by the skill of a surgeon, whom it was impossible to procure, the crime is none the less murder. The true point is, did the party die of the wound inflicted by the accused? If he did, the fact that he had no surgeon, or an unskilful one, or a nurse whose ill appliances may have aggravated the original hurt, cannot mitigate the crime of the person whose malice caused the death.” See also Com. vs. McPike, 3 Cush. 181; McAlister vs. State, 17 Ala. 434; Com. vs. Costley, 118 Mass. 1; State vs. Maphy, 33 Iowa, 270; Com. vs. Haskell, 2 Allen, 136.
2. The Judge sustained the challenge of the State to the competency of a juror under the following circumstances: Tho juror was examined on his voir dire, and stated that he had talked with one of the witnesses, who was present at tho killing, and had also heard of the homicide from others, and that from what ho had heard, had formed an opinion, but that opinion was not of a fixed character. The Judge stated in the bill in support of his ruling, that the juror lived about a mile from the scene of the homicide, and that the witness referred to was the main witness in the case; that he, the juror, was at the place soon after the wound was inflicted, and assisted in burying the deceased. That it was evident that he knew all about the case, and was anxious to get on the jury. We think, under these facts, that the ruling was correct. There is no respectable authority supporting the doctrine that the judge is stripped of all discretion touching the competency of a juror, who, on his voir dire, answers all right touching his competency, so far as relates to Ms bare assertion that he has formed no fixed opinion, although it may be evident from the facts disclosed on his examination, that his assertion was false, and his motive in making it corrupt. In this instance, the juror was a near neighbor, one of the first on the spot, conversed with the main witness who alone had witnessed the killing, and yet had no fixed opinion ! If a Judge, though convinced that a juror is incompetent, and that he has so shaped his answers as to conceal Ms incompetency, out of a desire to get on the jury, has no right to exclude him, then it might well happen that it would bo impossible to procure a conviction in some cases, however flagrant the crime and *397 plain the proof. And on the other hand, such a rule might operate to the prejudice of the accused at times, and prevent his acquittal, however innocent. The Judge is not absolutely hound by the answers of the juror, that he has or has not formed an opinion, when such answer is opposed and inconsistent with facts and circumstances disclosed by the juror on his examination, or otherwise legally known to the Judge. Besides, a distinction can very properly he made between the ruling of a Judge, who declares a juror competent against the challenge of the accused, and forces him on the jury against the protest of the accused, and the case where he declines to let one serve on the jury whom the accused may want there.. In the one case, the juror, who is forced on the accused, may not only, on account of previous bias, prevent his acquittal, hut secure his conviction, whilst in the other case, it is to be presumed that the juror chosen in the place of the one rejected, is an impartial juror, such as the law requires; and in this case, there is no complaint that the juror chosen in the place of' the one excluded was not in every way competent. And if, notwithstanding the exclusion of the juror that the accused was anxious to have, a fair and impartial jury was obtained, and we find no charge that it was not so, surely we cannot conclude that the accused was so seriously injured by the ruling as to entitle him to a new trial, or, in fact, that anything whatever was done to his prejudice.
We find no error in the proceedings, and the sentence and judgment are, therefore, affirmed with costs.
Chief Justice Bermudez and Justice Levy dissent.