(93 South. 69)

## LAWMAN v. STATE.  (7 Div. 769.)

(Court of Appeals of Alabama.   May 16, 1922.
Rehearing Denied June 13, 1922.)

**1. Criminal law ⚹⇒829(16)—Refusal to give special charge on point covered by general charge held not error.**

Under Acts 1915, p. 815, providing that the refusal of a charge shall not be cause for reversal, where the same rule of law was substantially given in the general charge, the refusal to give a charge that, if a certain witness has willfully sworn falsely concerning a material point, his testimony may be disregarded, was not error, where the court gave a general charge that the testimony of any witness may be disregarded if he has willfully sworn falsely. [Response of Supreme Court to certified questions.]

**2. Homicide ⚹⇒145—Intent to kill presumed from use of dangerous weapon.**

Where one strikes another with a dangerous weapon, and inflicts injuries which result in death, the law presumes that he intended, not only to commit the act, but also the necessary and probable consequences of the act.

**3. Homicide ⚹⇒268—Whether deceased met his death from blow by defendant held for the jury.**

In a prosecution for homicide, whether deceased came to his death as a result of the blow inflicted by defendant was for the jury, in view of the evidence.

**4. Homicide ⚹⇒5—Person inflicting dangerous wound is responsible for consequences.**

One who inflicts a dangerous wound, which results in death, is responsible for the consequences, though deceased might have recovered, with the exercise of more prudence and with better nurses.

**5. Homicide ⚹⇒171(1)—Evidence that deceased's mother was not sent for held inadmissible.**

In a prosecution for murder, the sustaining of an objection to evidence that deceased's mother, who lived about a mile away, was not sent for, was not error, where the evidence showed that none of the interested parties realized that deceased had been seriously injured.

**6. Homicide ⚹⇒300(12)—Instruction on self-defense held properly refused.**

In a prosecution for murder, an instruction that, if there is a reasonable doubt as to whether defendant acted in self-defense, after all the evidence has been considered, he should be acquitted, held properly refused, as not containing the constituent elements of self-defense, and as submitting a question of law to the jury.

**7. Criminal law ⚹⇒778(4) — Instruction that conclusion of innocence should be considered until proven beyond reasonable doubt held properly refused, as unintelligible.**

In a prosecution for murder, an instruction that, if there are two theories as to how the deceased met his death, one consistent with the innocence of defendant, and the other not, the one consistent with his innocence should be considered until the other is proven beyond a reasonable doubt, was properly refused, as being unintelligible.

**8. Criminal law ⚹⇒789(12) — Instruction on reasonable doubt held properly refused.**

In a prosecution for murder, an instruction that a reasonable doubt is such a doubt as would prevent a reasonably prudent man from acting in matters of the highest concern to himself on testimony such as you have heard and received was properly refused.

Appeal from Circuit Court, De Kalb County; A. E. Gamble, Judge.

Marg Lawman was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The following charges were refused to the defendant:

(A) "If you believe from the evidence that John Abbott has willfully sworn falsely concerning a material fact in this case, you are entitled to disregard his testimony altogether."

(B) "If you believe from the evidence in this case that John Abbott has willfully sworn falsely concerning a material fact in this case, you are entitled to disregard his testimony altogether, and if, after so disregarding his testimony, if you do so disregard it, you have a reasonable doubt of defendant's guilt, you should acquit the defendant."

(5) "I charge you that if, from the evidence, there are two theories as to how the deceased met his death, one consistent with the innocence of the defendant, and the other not, you should consider the one consistent with his innocence until the other is proven by the evidence beyond a reasonable doubt."

(7) "A reasonable doubt is such a doubt as would prevent a reasonably prudent man from acting in matters of the highest concern to himself upon testimony such as you have heard and received."

The court, at instance of the defendant, gave to the jury the following charge:

(17) "If you believe from the evidence that any individual witness has willfully sworn falsely concerning any material fact in this case, then you are authorized to disregard his testimony entirely, and if, after so disregarding said witness' testimony, if you do so disregard it, you have a reasonable doubt as to the defendant's guilt, you should acquit him."

In his argument to the jury the solicitor said:

"The trouble with this country, and the trouble with this county, is that the jurors have been more inclined to mercy than to justice."

The following is the response of the Supreme Court to inquiry heretofore certified by the Court of Appeals:

[1] The Court of Appeals propounds to the Supreme Court the inquiry defined in the following certificate:

"Under the provisions of the statute (Act approved March 9, 1911 [Acts 1911, p. 95] § 2) the following question is hereby certified to the Supreme Court for determination, as the judges of the Court of Appeals are unable to reach a unanimous conclusion or decision in case pending in said court wherein the question is involved.

"(1) Is the opinion in the case of Taylor v. State, 17 Ala. App. 28, 81 South. 364, sound, wherein it relates to the question of the refusal of the special charge, to wit: Charge 5. 'If you believe Levi Marchman has willfully sworn falsely concerning any material point in this case, then you are authorized to disregard his testimony entirely.'

"In the Taylor Case, supra, the original record shows that the court gave the following charge: Charge 1. 'If you believe any witness has willfully sworn falsely concerning any material point in this case, then you are authorized to disregard his testimony entirely.' It will be noted in the Taylor Case, supra, that it was held error to refuse charge 5, supra, even though the court had given charge 1, set out above; the concrete question being whether or not refused charge 5 was substantially and fairly covered by given charge 1, under provisions of Acts 1915, p. 815.

"This April 28, 1922.

"C. R. Bricken, Presiding Judge."

McCLELLAN, J. Among other things, the act approved September 25, 1915 (Acts 1915, p. 815), provides: "The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal, if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties." The only difference between specially requested instruction 5 (the refusal of which was held to be error in Taylor v. State, 17 Ala. App. 28, 81 South. 364) and given charge 1, as reproduced in the certificate of the Court of Appeals, ante, is that the former (charge 5) names a●particular witness, and the latter (charge 1) refers, generally, to "any witness" found to have "willfully sworn falsely concerning any material point in the case." The greater includes the lesser. The generally applicable reference in charge 1 to "any witness" comprehended, necessarily, the witness named in refused request numbered 5. Since the proposition and subject-matter of request numbered 5 was given to the jury through the broader, yet equally applicable, terms employed in charge 1, the conclusion to reverse in Taylor v. State, supra, was erroneous, and that decision, in the particular under consideration, is unsound.

All the Justices concur.

Isbell & Scott, of Ft. Payne, for appellant.

The court erred in refusing charges A and B. 94 Ala. 100, 10 South. 528; 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28; 107 Ala. 40, 19 South. 37; 196 Ala. 586, 72 South. 20; 81 South. 364; 13 Ala. App. 181, 69 South. 485; · 193 Ala. 51, 69 South., 531; 189 Ala. 579, 66 South. 600. Counsel discuss the other matters insisted upon, but without further citation of authority.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen,. for the State.

There was no error in the ruling on the argument of the solicitor. 17 Ala. App. 536, 87 South. 701. Charges A and B were fully covered by given charge 17. 8 Ala. App. 23, 62 South. 383. Counsel discuss the other assignments of error, but without further citation of authority.

BRICKEN, P. J. [2] The earnest insistence of able counsel for this aged appellant, to the effect that it is clearly manifest from the proven facts in this case there was no intention upon the part of defendant to take the life of William Abbott, deceased, in the minor difficulty between these parties, must of necessity be answered by the well-known rule of law to the effect that the law presumes every person intends to do that which he does, and that the defendant must be presumed to have designed not only what he did, but also that the necessary and probable consequences of his acts were intended. McElroy v. State, 75 Ala. 9.

"The law presumes that every person intends to do that which he does." 1 Bishop on Criminal Law, § 248.

"Hence, whenever one does an act legally wrong in itself, the law presumes the intent to do that act; the act, of itself, evidences the illegal intent. The doing of an act in its nature illegal—illegal without any extrinsic qualification—of itself evidences the criminal intent." Stein v. State, 37 Ala. 123, 134.

[3] The undisputed testimony in this case shows that late in the afternoon (preceding the death of Abbott, which occurred at about 3 o'clock the next morning) the defendant and deceased engaged in a difficulty in the road a short distance from the house of deceased; that in this difficulty defendant struck deceased and knocked him down. The testimony as to the details, extent, and gravity of the difficulty is in sharp conflict; and while there was no direct evidence as to the immediate cause of the death of William Abbott (the deceased named in the indictment), we are constrained to hold that this important inquiry was properly submitted to the jury for its determination under the proof in this case—the burden of proof being upon the state to show beyond a reasonable doubt that the deceased came to his death as a result of the alleged attack upon. him by defendant, by one or more of the means averred in the indictment.

We are of the opinion that, from the following excerpts of the testimony of the state's witnesses, as well as from other evidence adduced upon this trial, the material question as to whether or not deceased came

to his death as a result of the blows inflicted upon him by the defendant, not only authorized, but of necessity required, the court to submit this question to the jury for its determination. Among other things state witness John Abbott testified:

"I did not see my son [deceased] doing anything at the time Lawman [defendant] hit him. I was standing talking to that woman, Pate Lawman's wife, and Pearl said, 'Lord of Mercy, they are fighting,' and I looked around and seen him hit on the neck with that stick. * * * I did not see any blood about him at that time, but at the time he died it ran out of his nose. * * * I did not measure the seasoned oak stick. It was something like this chair post here. That night, before he was buried the next day, blood commencing running out of his mouth and nose."

Pearl Sharp, witness for the state, among other things, testified:

"When I got down there, the old man [defendant] was going on William [deceased] with a stick; he had done hit him twice before I got there. * * * I saw him hit Will twice. * * * He come that way with his hands you know, and across the side of his head. * * * That bruise on his neck here was a bad bruise. It was turning black. * * * He did not talk after this difficulty, anything that you could understand."

He also testified:

"I noticed him after he was dead. There was some blood when I got there, running out of his mouth and nose; mostly out of his mouth. That was after he died. I seen a little bit of blood kinder oozing out of his mouth, when he laid down before he died. That was not but a few minutes after we got back to the house."

And on cross-examination this witness testified that, after deceased was struck, he was not able to walk and was not able to talk. Also:

"I saw William Abbott struck once on the neck, and once on the side of the head. I saw the bruise, and there was blood there. He knocked him down. * * * He was getting up the first time I saw him, and he knocked him down two more times before I got down there. When he got to the house, he could not talk at all; just kinder groaned; just muttering and motioning."

The testimony of Mrs. Clara Abbott, wife of deceased, was practically to the same effect as that of witness Sharp.

Walter Hartline, for the state, testified, among other things, as follows:

"I assisted in dressing the body. He had a skinned place on his nose is all the wound I found about him. He appeared like a bruised place on his ear, or by the side of his ear, and the blood was running out of his ear. The blood was coming out of his nostrils and out of his mouth pretty freely. Yes, sir; blood was oozing out of nose and mouth, and out of his right ear. There seemed to be a place about along there on his left side, on his left side, as broad as my three fingers, a dark place. That wound seemed to be about three or four inches long, and about as broad as my three fingers, or hardly as broad. It extended up and down. His neck was awfully swollen."

[4] The fact that no physician was sent for to attend the injured man cannot avail the defendant, for when death is caused by a dangerous wound, the person inflicting it is responsible for the consequences, though the deceased might have recovered with the exercise of more prudence and with better nurses. Bowles v. State, 58 Ala. 335. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it, or of the wounded man suffering from it, will afford the defendant no protection against a charge of unlawful homicide. In Daughdrill v. State, 113 Ala. 7, 34, 21 South. 378, 387, the Supreme Court said:

"It was not necessary to a conviction * * * that the wound should have been 'necessarily fatal.' A defendant cannot escape the penalties for an act which in point of fact produces death, because death might possibly have been averted by some possible mode of treatment."

See, also, Morea's Case, 2 Ala. 275; Parsons v. State, 21 Ala. 300; McAllister v. State, 17 Ala. 434, 52 Am. Dec. 180; Winter v. State, 123 Ala. 1, 11, 26 South. 949; Huckabee v. State, 159 Ala. 45, 49, 48 South. 796.

[5] It is very evident from the testimony in this case that none of the interested parties realized that deceased had been seriously injured in the difficulty with defendant. The proof did show, however, that prior to the difficulty, and before deceased was struck by defendant, he (deceased) while somewhat under the influence of liquor, acted in a normal way, had full possession of his faculties, could walk and talk, etc.; but, immediately after being struck and knocked down by defendant, there was direct testimony to the effect that he could neither walk nor talk, and that he had to be assisted to his home a short distance away by two men, and that he could not speak, and finally died several hours after the difficulty. The failure of the family, therefore, to send for the injured man's mother, who was only a mile or so away, may thus be accounted for; but the court properly refused to permit the defendant to show that the mother had not been sent for, as this fact did not, nor could not, tend to shed any light upon any phase of this case, and when the state interposed objection to the question, no effort was made to show to the court the relevancy of the matter sought to be adduced.

Each of the court's rulings upon the testimony have been carefully examined. No error of a reversible nature is shown in any of these rulings. There was nothing to show

that the whisky alleged to have been drunk by deceased contained lye, and therefore the ruling of the court during the examination of Dr. W. E. Quin was without error.

The exception to the action of the court in overruling the motion to exclude a portion of the argument of the solicitor is without merit. There was nothing in this argument, objected to, which would authorize, justify, or require a reversal of this case.

The court refused special charges A and B, requested by defendant, and it is strenuously insisted that in so doing he committed reversible error. In this connection the defendant cites the case of Taylor v. State, 17 Ala. App. 28, 81 South. 364, wherein this court specifically held that the refusal of this charge was error, even though the court below had dealt generally with the same proposition of law by another given charge. In the Taylor Case, supra, the court gave this charge:

"If you believe any witness has willfully sworn falsely concerning any material point in this case, then you are authorized to disregard his testimony entirely."

In that case (Taylor, supra) the court *refused* the following charge:

"If you believe Levi Marchman has willfully sworn falsely concerning any material point in this case, then you are authorized to disregard his testimony entirely."

It will thus be seen that the question presented here is identical with the question in the Taylor Case, supra, and the ruling in the Taylor Case is a direct and pointed authority which bears out and sustains the appellant in the insistence that the refusal of the charges A and B was error, even though the court gave charge 17. In the Taylor Case, Brown, P. J., speaking for this court said:

"There was evidence tending to show that the witness Marchman had made statements out of court contradictory of his testimony on the trial, touching the question of his identification of the defendant at the time of the assault, a question as to which the evidence was in sharp conflict, and it was the defendant's right to have the jury instructed on this point specifically as to this witness."

The writer entertained some doubt as to the correctness of this ruling in view of the statute approved September 25, 1915 (Acts 1915, p. 815), which provides:

"The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal, if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties."

Being thus in doubt, and being reluctant to overrule a former decision of this court directly in point, resort was made to the statute creating this court, wherein it is pro-

vided that, under a certain status, questions of like character may be certified to the Supreme Court for decision. The specific question was therefore certified, and in response thereto the Supreme Court held that the Taylor Case, supra, was unsound in this respect. Mr. Justice McClellan, speaking for the court, said:

"The only difference between specially requested instruction 5 (the refusal of which was held to be error in Taylor v. State, 17 Ala. App. 28) and given charge 1, as reproduced in the certificate of the Court of Appeals, ante, is that the former (charge 5) names a particular witness, and the latter (charge 1) refers, generally, to 'any witness' found to have 'willfully sworn falsely concerning any material point in the case.' The greater includes the lesser. The generally applicable reference in charge 1 to 'any witness' comprehended, necessarily, the witness named in refused request numbered 5. Since the proposition and subject-matter of request numbered 5 was given to the jury through the broader, yet equally applicable, terms employed in charge 1, the conclusion to reverse in Taylor v. State, supra, was erroneous; and that decision, in the particular under consideration, is unsound."

Under this authority the decision in the case of Taylor v. State, 17 Ala. App. 28, 81 So. 364, is declared unsound, and is hereby expressly overruled, so far as said decision relates to this particular question.

[6] In the instant case, while charges A and B are good charges (Leatherwood v. State, 17 Ala. App. 498, 85 South. 875; Pearson v. State, 13 Ala. App. 181, 69 South. 485; Hale v. State, 122 Ala. 85, 26 South. 236; Carpenter v. State, 193 Ala. 51, 69 South. 531; Reynolds v. State, 196 Ala. 586, 72 South. 20), the refusal of these charges was not error, for the reason the same rule of law was substantially and fairly given to the jury in charge 17, requested in writing by defendant.

Refused charge C was as follows:

"After considering all the testimony of the case, if you have a reasonable doubt as to whether the defendant acted in self-defense, then you should acquit the defendant."

It occurs to the writer that there is much force in the argument of appellant's counsel why the refusal of this charge was error, the court having already charged the jury fully on the law of self-defense, and the statute providing expressly that all special charges given by the court at request of parties must be taken and considered in connection with the oral charge of the court, the whole thus constituting the law in the case; and it appears anomalous that this charge has been many times condemned for its failure to set out the constituent elements of self-defense, when the court in its oral charge had covered fully this very question. But we are without authority to hold that the refusal of this charge constitutes error.

The rule as established appears to be that each charge requested must be complete and perfect in itself, without reference to any other charge, general or special, given by the court. Miller v. State, 107 Ala. 40, 59, 19 South. 37. The charge has been condemned many times; the criticisms being that it fails to set out the constituent elements of self-defense, and that it submits the question of law to the jury to determine what constitutes self-defense. Powell v. State, 5 Ala. App. 75, 82, 59 South. 530, and numerous cases therein cited; Hendley v. State, 200 Ala. 546, 76 South. 904.

Charges 1 and 2, if not otherwise objectionable, were substantially and fairly covered by given charges 13, 14, 15, and 16, and by the oral charge.

Charge 3 is also fully covered by the oral charge and given charges. Moreover, it is misleading in some of its aspects, and is objectionable also in singling out parts of the testimony. Its refusal was not error.

[7, 8] Charge 5, as it appears in the record, is unintelligible, and otherwise bad. The same criticism may be applied to charge 7.

No error is apparent on the record, and the judgment of the circuit court, appealed from, must be affirmed.

Affirmed.