194 So. 694

## INGRAM v. STATE.

### 5 Div. 78.

Court of Appeals of Alabama.
Dec. 19, 1939.

Rehearing Denied Jan. 16, 1940.

E. Herndon Glenn, of Opelika, and Pruet & Glass, of Ashland, for appellant.

Thos. S. Lawson, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The insistences of error relied upon to effect a reversal of the judgment of conviction from which this appeal was taken, are based principally upon exceptions reserved to the rulings of the court upon the admission and rejection of evidence.

The indictment charged the defendant with the offense of murder in the second degree, and the trial resulted in his conviction of manslaughter in the first degree, the punishment being fixed by the jury at imprisonment for a period of ten years.

It was charged in the indictment that this appellant, defendant below, unlawfully and with malice aforethought killed Raymond Earl Ennis by stabbing him, or cutting him with a knife, but without premeditation or deliberation, etc.

The evidence, upon the trial, disclosed without dispute or conflict that Ennis died as a result of knife wounds inflicted upon him by this appellant. State witness, Dr. Bruce, who attended the wounded man

testified that, "his heart sac was punctured, and the heart too, and that that wound and complications following it caused his death." The evidence further disclosed that the alleged fatal difficulty occurred on the 31st of July 1937, and that Ennis died, as a result of the wounds on November 13, 1937, following. Also, that he was constantly treated by physicians from the date of the infliction of the wounds until his death.

On the question of the lapse of time between the infliction of the wounds by defendant, and the death of Ennis, the alleged injured party, the trial court in the oral charge stated: "The defendant further says that he should be acquitted in this case because of the lapse of time that intervened from the 31st day of July until the 13th day of November, the first day being the day that the deceased man received the wound and the last date being the day of his death, that erroneous treatment intervened in there at the hands of physicians, that he did not die as the result of the wound, but that he died by reason of something that the doctor did to him or failed to do. Now, the law with reference to that is this, gentlemen of the jury. A wound given by one person to another dangerous in itself, produced by a deadly weapon and liable to produce death, if such wound was given, then mere erroneous treatment could not be a defense for the infliction of the wound. The defendant cannot say that the man died because of the erroneous treatment, failure of the proper treatment, provided, gentlemen of the jury, that it was a dangerous wound in itself and liable to produce death. Now the Court charges you with reference to this particular case here, if this jury believe beyond a reasonable doubt, as some of this testimony tends to show, that this man was stabbed with a knife, the Court charges you that a knife is a deadly weapon and that its use in a difficulty is a malicious use so presumed by the law unless the testimony which shows its use rebuts that presumption and if a person is stabbed with a knife that is, per se, a dangerous wound and liable to produce death, then, gentlemen, it is not necessary that the wound should have been necessarily fatal. The law is simply as I have given it to you that where the wound is in itself dangerous to life mere erroneous treatment of it or of the wounded man suffering from it will amount to no defense in an unlawful homicide."

■ The foregoing statement by the trial judge is in line with the controlling decisions of the appellate courts of this State; for it is definitely settled that a defendant cannot escape the penalties for an intentional act which in point of fact produces death, because death might possibly have been averted by some possible mode of treatment. The well settled and oft announced rule is, where the wound is in itself dangerous to life, mere erroneous treatment of it, or of the wounded person suffering from it, will afford the defendant no protection in a charge of homicide. In other words, where death is caused by a dangerous wound, the person inflicting it is responsible for the consequences, though the deceased might have recovered with the exercise of more prudence and with better nurses. Bowles v. State, 58 Ala. 335; Lawman v. State, 18 Ala.App. 569, 93 So. 69. In Daughdrill v. State, 113 Ala. 7, 34, 21 So. 378, 387, the Supreme Court said: "It was not necessary to a conviction * * * that the wound should have been 'necessarily fatal.' A defendant cannot escape the penalties for an act which in point of fact produces death because death might possibly have been averted by some possible mode of treatment." See, also, Morea's case, State v. Morea, 2 Ala. 275; Parsons v. State, 21 Ala. 300; McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180; Winter v. State, 123 Ala. 1, 11, 26 So. 949; Huckabee v. State, 159 Ala. 45, 49, 48 So. 796.

■■ Two separate objections were interposed and exceptions reserved to the court's rulings upon argument of counsel. We are of the opinion that these rulings were free from error, hence the exceptions in this connection cannot be sustained. The record shows that the prosecuting attorney in the opening argument stated: "The defendant is the luckiest man in Lee County that he is not on trial here for the offense of murder in the first degree." We regard said statement as being the mere expression of an opinion, not the statement of a fact pertinent to the issue. We are also of the opinion that the court properly sustained the objection to the remark of defendant's counsel to the effect, "That a physician, Dr. Cole, had treated the deceased, and the State should have had that physician here to testify, and that that physician could have testified as to the cause of death." It is an elementary rule that counsel may not be allowed to comment on failure of adverse party to call witness equally available to both parties. 6 Alabama Digest, Criminal Law, page 583, ☞ 721½.

The insistence of counsel for appellant that there were two separate and distinct difficulties on the night in question, is not borne out by the record. This contention is based uopn the testimony of State witness Edward Gray, and as we see it Gray's testimony definitely refutes this insistence. He testified among other things: "I was present out at Condon's Lake in July, 1937, when the defendant cut Raymond Earl Ennis; I was there when the difficulty or the trouble started. The difficulty was started by the defendant pushing Ennis into the lake. I didn't hear anything said between either one of them only when Ennis told the defendant he had pushed him in the lake; that's all I heard about it; I was there; I didn't see the cutting. I saw the knife in the defendant's hand. I was over at the dance hall and they said somebody was fighting over there. I walked over there and Ennis was coming up from the lake, and he walked up there and the defendant caught him and had the knife open, had it back like this. J. B. Landreth and I just walked up and Ennis said 'Syl, you done pushed me in the lake;' the defendant said something about his sister, asked Ennis something, if somebody said something about his sister, and said if he didn't tell him he was going to cut him; about that time the defendant drew back and when he did I caught his arm, and defendant pulled that arm through my arm and he cut my hand and I left. The defendant and Ennis were not far apart when I got my hand cut; they were right close together there."

The foregoing was substantiated by practically all the evidence in the case showing conclusively there was but one difficulty, and not two, as contended. The exceptions noted were mainly predicated upon the fact that the points involved were not of the res gestae. To the contrary each ruling of the court upon the testimony was clearly without error, and needs no detailed discussion.

■ It appears from the record, that a defendant's witness one A. J. Gray was absent, and that the State admitted a showing as to said witness, subject to legal exceptions and objection. When said showing was offered by defendant the State objected to the following portion

of said showing, towit: "On the morning following the cutting Sylvester Ingram came by my store and was still in a very nervous and shaky condition and had a knot or lump on the temple under his hair which indicated that he had been hit on the head a severe blow by some blunt instrument." The court properly sustained the State's objection to the above quoted portion of the showing, as it related to a mere conjecture or conclusion, and was therefore inadmissible.

Refused charges 13, 14 and 15, were affirmative charges as to the three degrees of homicide comprehended in the indictment. There is no phase of this case which entitled the defendant to either of said charges. The court gave, at the instance of defendant, numerous written charges, and delivered a most excellent, exhaustive, able and explicit oral charge covering ten pages of this record. Every substantial right of the accused was thus safeguarded. No motion for a new trial was made.

After a careful and attentive consideration of every question shown by the record, or reserved by bill of exceptions we are clear to the conclusion that the accused was accorded a fair and impartial trial, such as the law provides, and no error appears in any ruling of the court calculated to injuriously affect his substantial rights.

The judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.

### On Rehearing.

In the original opinion this court stated: "After a careful consideration of *every question* shown by the record, or reserved by bill of exceptions, we are clear to the conclusion that the accused was accorded a fair and impartial trial, such as the law provides, and no error appears in any ruling of the court calculated to injuriously affect his substantial rights."

Now, on this application for rehearing, we adhere to and emphasize the foregoing statement by this court. Upon the trial in the court below the state contended, and offered evidence tending to sustain this insistence, that the killing of deceased by this appellant was atrocious, cruel and lawless, and wholly without mitigating circumstance or any semblance of justification.

The testimony of Herrin Gilmore, the first State witness, as to the facts was, in part, as follows: "I know Sylvester Ingram. I knew Raymond Ennis in his lifetime. In July, 1937, I was at Condon's Lake up here in Lee County when a difficulty occurred between Ingram and Ennis; I saw the difficulty. I was just a little piece from Ingram and Ennis, the participants in the difficulty. As to how the difficulty commenced, Ingram was drunk and he walked up to me and said 'You know who that was said that about my sister on the truck?' I said 'No'. He said 'You're a damn liar. You do. If you don't tell I am going to cut you.' He started to cut me and I caught his hand and got out of the way. Ingram walked up to Ennis and said 'You know who that was said that about my sister?' Ennis said 'No'. Ingram said 'I am going to cut you.' Ennis started backing back out of the way. Ingram was after him and he pushed Ennis into the lake, into the water. When Ennis come out he ran around a tree, and Ingram ran around there and cut him three times, and Ingram ran in the woods. Ingram cut Ennis on both arms and he stabbed him in the heart. That occurred in Lee County at Condon's Lake."

The testimony of several other State witnesses was of like import. The defendant testified in his own behalf, and the substance of his testimony was to the effect, he was drunk on the occasion in question, and could not remember what took place. There was no denial by anyone of the fact that the defendant cut and stabbed the deceased. The defendant's sister, Mrs. Essie Turner, and her husband, Robert Turner, testified to some facts tending to show self-defense. The testimony presented a jury question; whose province it was to determine the guilt or innocence of the defendant, and, if convicted, the degree of homicide, and also fix his punishment. There was no erroneous ruling of the court calculated to injuriously affect the substantial rights of the defendant. Again we state, he was accorded a fair and impartial trial, and certainly the merciful and lenient verdict of the jury, under the facts in this case, is not a matter of which appellant could complain.

Application for rehearing overruled.