25 So.2d 51

### WARREN v. STATE.
### 3 Div. 874.

Court of Appeals of Alabama.
Feb. 19, 1946.

Jack L. Capell, of Montgomery, and D. M. Powell, of Greenville, for appellant.

274

Wm. N. McQueen, Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State,

HARWOOD, Judge.

The appellant, Archie Warren, his wife Pearl, Lillie May Leatherwood, sister-in-law, and Pearlee Leatherwood, mother of the two women, lived together in Pearlee's house on a farm in Lowndes County. Late on a Sunday afternoon in early May of 1945 the appellant and Lillie May Leatherwood began an argument, and appellant's wife Pearl, apparently in an effort to break up the quarrel, sent appellant out for stove wood.

When appellant returned, Pearl and Pearlee were in one room and Lillie May was in an adjoining room. They heard a sound of wood being dropped on the porch and shortly thereafter heard Lillie May cry out "Don't hit me no more." Both women immediately went into the adjoining room. They found Lillie May standing near the door to the porch and appellant on the porch. Pearl then pushed appellant off the porch and he left the premises temporarily. In answer to the question "Did you see any abrasion or wound or anything unnatural on her body?" Pearlee, the Mother, answered "I saw a little place on her head about that big" (indicating). This wound is not further described.

Thereafter Lillie May was unable to do her usual work, and complained constantly of headache, and consulted three doctors concerning her condition, and died on 29 May 1945.

After the above proof the State offered witnesses to show certain incriminating statements made by appellant concerning his difficulty with Lillie May. Appellant objected to such testimony on the grounds that there had been no proof of the corpus delicti.

The corpus delicti may be established by circumstantial evidence. Hill v. State, 207 Ala. 444, 93 So. 460; Ratliff v. State, 212 Ala. 410, 102 So. 621; McDowell v. State, 238 Ala. 101, 189 So. 183; Rowe v. State, 243 Ala. 618, 11 So. 2d 749. It need not be proved by direct or positive testimony, and may be shown by evidence from which only a reasonable inference that the offense has been committed may be drawn by the jury, the proved facts and circumstances being considered together. Patterson v. State, 202 Ala. 65, 79 So. 459. Two elements must be present, first, a criminal act, and second, the defendant's agency in the production of the act. Mills v. State, 17 Ala.App. 493, 85 So. 867.

In this case the State showed that there had been a difficulty between appellant and deceased, during which deceased was heard to exclaim "Don't hit me no more." Appellant had just returned with an armful of stove wood at this time. A small wound was observed on deceased's head at the time the difficulty ended. Deceased thereafter complained constantly of headache, was unable to do her usual chores, and died some sixteen days later. Under these facts, and the principles of law above set forth, it is our opinion that the corpus delicti had been sufficiently established to permit the introduction of the incriminating statements made by appellant.

Several days after the difficulty appellant told his brother-in-law that he had "done beat" Lillie May, and while in jail told a deputy sheriff, in response to a question as to "What was the trouble between you and that woman?" replied that "She cursed me and I hit her with a stick." The voluntariness of the above statements was established before their admission and in our opinion the trial court's action in overruling objections to their admission was correct.

Two days after the difficulty Lillie May was taken to Dr. James at Hayneville. She told this physician only that she was suffering from a headache, and did not mention any blow on the head. He tried to find the cause, but she only told him her head was hurting, so he thought her trouble came from something she had eaten and gave her some aspirin tablets to take. Dr. James did not examine her head.

Lillie May next consulted Dr. E. G. Burson of Furman, Alabama. Again she complained only of a headache, did not mention having received a blow, and Dr. Burson gave her some tablets to relieve what he thought her condition to be.

On May 28 Lillie May went to Dr. Samuel B. Allison at Carlowville. She again complained of headache, which had lasted for two weeks, and informed this doctor she had received a blow on her head. Examining her head Dr. Allison found a large fluctuating tumor on the left side. He opened this tumor with a sterilized knife and a great deal of black, bloody fluid came out. He thought this was blood mixed with brain fluid. After such fluid had been removed the doctor examined the wound with his fingers and found a depressed fracture as though the skull had been driven in. This fracture was oblong in shape and about the size of a quarter. He then advised Lillie May to go to a hospital and have an operation.

Instead of going to a hospital Lillie May returned to her home, and the next day she died, apparently about sixteen days after her difficulty with appellant. In Dr. Allison's opinion death resulted from her head injury.

During his direct examination Dr. Allison testified that deceased told him she had received a blow on her head. A short time later the Solicitor asked the witness: "You say she complained of having received a blow or lick—?" Appellant's counsel objected on the grounds that the question called for hearsay testimony. The court informed appellant's counsel that the witness had already testified that deceased said she had received a blow on the head. Appellant's counsel thereupon stated: "I didn't understand the doctor to use that expression about the blow and I move the court to exclude that statement, that she said she had received a blow on her head, because it is mere hearsay." The court overruled the motion to exclude and counsel duly excepted. Had appropriate steps been taken at the time such testimony was given to eradicate it from the record the court would have been in error not to have done so, as such testimony, not being covered by Section

415, Title 7, Code of 1940, pertaining to written hospital records, was clearly hearsay and inadmissible. McMahan v. State, 21 Ala.App. 522, 109 So. 553; Youngblood v. State, 30 Ala.App. 57, 200 So. 577. As this case must be reversed on other grounds we see no need of passing on the question of whether the trial court abused its discretion in overruling the motion to exclude this phase of Dr. Allison's testimony, considering the delay and circumstances under which the motion was made. We do express the opinion however that it would not have been out of order for the court to have granted such motion.

During examination of the medical witnesses by counsel for appellant he sought to question them on whether in their opinion deceased's death was not materially effected by lack of proper care on deceased's part, particularly her failure to report to a hospital for an operation as advised by Dr. Allison. The court sustained objections to all such questions, and in our opinion properly so.

A surprising number of Alabama cases have dealt with this interesting question. In Parsons v. State, 21 Ala. 300, the court wrote:

"We all agree that, ordinarily, if a wound is inflicted not dangerous in itself, and the death was evidently occasioned by grossly erroneous treatment, the original author will not be accountable. 1 Hale's P.C. 428; 1 East C. L. 344, § 113. And we agree, also, that if the wound was mortal or dangerous, the person who inflicted it cannot shelter himself under the plea of erroneous treatment. East C. L. 344, § 113." Certainly the wound inflicted on the deceased in the present case was dangerous.

An excellent summary of the doctrines of the Alabama cases dealing with the point immediately under discussion is found in Ingram v. State, 29 Ala.App. 144, 194 So. 694, 695, wherein Bricken, P.J., wrote:

" * * * for it is definitely settled that a defendant cannot escape the penalties for an intentional act which in point of fact produces death, because death might possibly have been averted by some possible mode of treatment. The well settled and oft announced rule is, where the wound is in itself dangerous to life, mere erroneous treatment of it, or of the wounded person suffering from it, will afford the defendant no protection in a charge of homicide. In other words, where death is caused by a dangerous wound, the person inflicting it

is responsible for the consequences, though the deceased might have recovered with the exercise of more prudence and with better nurses. Bowles v. State, 58 Ala. 335; Lawman v. State, 18 Ala.App. 569, 93 So. 69. In Daughdrill v. State, 113 Ala. 7, 34, 21 So. 378, 387, the Supreme Court said: 'It was not necessary to a conviction * * * that the wound should have been "necessarily fatal." A defendant cannot escape the penalties for an act which in point of fact produces death because death might possibly have been averted by some possible mode of treatment.' See, also, Morea's case, State v. Morea, 2 Ala. 275; Parsons v. State, 21 Ala. 300; McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180; Winter v. State, 123 Ala. 1, 11, 26 So. 949; Huckabee v. State, 159 Ala. 45, 49, 48 So. 796."

During the trial below the defendant introduced a large number of character witnesses. The trial court did not cover the effect of proof of good character in his oral charge, nor was it covered in any of the written charges given at the request of appellant.

Among the written charges requested by the appellant and refused by the court was the following:

"4. The court charges the jury that good character itself, may in connection with all the evidence, generate a reasonable doubt and entitles the defendant to an acquittal, even though without such proof of good character you would convict."

The above charge has been approved in Newsom v. State, 107 Ala. 133, 18 So. 206; Bryant v. State, 116 Ala. 445, 23 So. 40; Taylor v. State, 149 Ala. 32, 42 So. 996. Its refusal in this case was error.

Reversed and remanded.