PER CURIAM.
This petition for certiorari presents for review the decision of the Fourth District Court of Appeal reversing the Honorable Joseph S. White as Trial Judge for an alleged abuse of discretion in dismissing the action after he had earlier entered a specific performance judgment. The dismissal was after the respondents (plaintiffs below) failed after 80 days to comply with the requirements of the judgment necessary to carry out its terms for transfer of the property to plaintiffs-vendees. Hoffmann v. Delray Beach Whitehouse Apts., 242 So.2d 769 (4th DCA Fla.1970). Conflict is shown with the prior decisions of this Court in Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756 (1894) ; Daubmyre v. Hunter, 86 Fla. 326, 98 So. 69 (1923); Orlando Realty Board Building Corp. v. Hilpert, 98 Fla. 954, 113 So. 100 (1927); and Greenfield v. Bland, 99 So.2d 727 (2nd DCA Fla.1958), vesting jurisdiction here. Fla.Const. art. V, § 4, F.S.A.
The trial judge, with an experience on the Florida trial bench spanning a period of almost 30 years, drew a four-page order setting forth the purchase transaction involved and the requirements to be met. Plaintiffs moved to amend the judgment to clarify its terms and, after hearing, the trial judge drew another three-page order. It set forth the time for plaintiffs to tender into the registry of the court the cash down payment and the promissory note and first purchase money mortgage which had been provided in the deposit receipt. Following this, the Order stated:
“At the same time Plaintiffs shall place in the hands of the Clerk a promissory note and a purchase money mortgage for delivery to the Defendant [Appellant]. Such note and mortgage shall be dated as of the date of the institution of this suit and shall be payable at the times and in the amounts with interest fixed by said contract commencing on such date of the institution of this suit; provided, however, there shall be credited on the ■amount of said note and mortgage all sums which Plaintiffs are required to pay in discharge of the first mortgage now encumbering the property, commencing with the first payment maturing under the terms of Defendant’s note and purchase money mortgage and continuing with each installment thereafter until the *552 total sum paid by Plaintiffs on account of the first mortgage now encumbering the property has been credited on such installments.” [emphasis ours]
* * * * * *
“ . . . Upon failure of Plaintiffs (Vendees) to so comply, this cause shall be subject to dismissal and in that case, Court costs shall be taxed against Plaintiffs.”
By this September 9, 1969, order, the trial court granted an additional 7 days beyond the 55 days which had already elapsed without compliance from the date of entry of the final judgment on July 15. Upon expiration of the 7 days, defendant moved to dismiss for plaintiffs’ noncompliance. The trial judge thereupon dismissed the cause and the Fourth District Court of Appeal reversed such dismissal as an abuse of discretion.
The district court also cited as grounds for its reversal the vendees’ (respondents’) “offer” to pay instanter at the rehearing on the dismissal. What the attorney said at the conclusion of the rehearing on October 3, 1969 (80 days after final judgment) was:
“I am in a position to do it right now, we represent to your Honor that we have been in a position to pay this mortgage off if we were specifically directed to do so. We are in a position to do it now, and I have a check that I can write.” [emphasis ours]
* * * * * *
“ . . . Tell us to pay it off and we will pay it off.”
This was neither a sufficient nor timely legal tender in the circumstances of this case.[1] At this late stage after the court’s earlier rulings, and the passage of 80 days’ time for compliance, it cannot properly be said that the trial judge abused his discretion.[2] Chabot, supra, held 37 days sufficient for a payment of money.
In a recent Fourth District Court opinion, Glave v. Brandlein, Fla.App., 196 So.2d 780 (1967), the same court in this present cer-tiorari affirmed a judgment denying the relief of specific performance of a real estate contract to the plaintiffs-vendees there. In reviewing the trial court’s action, this Fourth District Court stated:
“As a condition precedent to specific performance the seeking purchaser must either pay the contract sum; tender it; establish that he is ready, willing and able to do so; or establish that he has been excused from so doing. It would be am anomaly indeed, under equity principles, for a vendee to ask a court to judicially require a vendor to remedy his defaults and perform his covenants by conveying title to vendee when there is no showing on the part of such vendee that he has paid or tendered the contract price as covenanted or that he is willing and has the ability to do so.” [emphasis ours]
The crux of vendees’ (respondents’) contention is that they "did not know” that they were required to pay an existing $150,000 mortgage from vendor to Home Federal Savings & Loan Association of Hollywood, Florida, which had at all times existed on the premises. Vendees take the position that the wording of the final judgment and amended final judgment merely “permitted” them to pay off this $150,000 obligation if they chose to do so, but did not require them to pay it.
The same amended final judgment obtained by vendees which is quoted above, also set forth: “It was stated [referring to the hearing on Motion to Amend] that plaintiffs [respondents] would be expected *553 to discharge the first mortgage now encumbering the property.” [emphasis ours]
This alone refutes respondents’ contention. The remainder of the record also belies vendees’ position that they did not know that they were to pay this mortgage. The record shows that:
Vendees’ amended complaint stated in paragraph 10:
“The plaintiffs hereby tender their willingness to perform and are ready, willing and able to pay the necessary portion of the purchase price stated in the aforesaid deposit receipt agreement in cash to fully satisfy the aforesaid mortgage [$150,000] and to pay the balance of the purchase price in the form of a promissory note and purchase money mortgage payable to the defendant. . . . ” [emphasis ours]
This plainly referred to the $150,000 Home Mortgage to be paid by vendees, so that from the very beginning of the lawsuit it is clear that vendees by their own statement were aware that it was necessary to pay off the existing mortgage, as one would normally expect.
The final judgment recites in regard to this existing mortgage:
“It was shown at the trial that the vendor had arranged with a Miami bank to lend the vendor sufficient money to pay off an existing mortgage on the property. The loan was to be secured by an assignment to the bank of the mortgage which the purchasers were required to give to the vendor under the terms of the contract in question.
‡ ^ ‡
"... The vendor’s attorney testified that he extended the time of closing no later than September 1, 1968, because that is when the bank’s commitment expired.”
It is thus made clear in the final judgment that the existing first mortgage had to be paid off from the proceeds of the sale, which is not an unusual or unexpected procedure. The basic background of the entire lawsuit was the ever present $150,000 Home Mortgage. Vendor was relying on the September 1 closing date for the very reason that this mortgage had to be paid off then. It went into default when no closing ensued, and vendor has been paying $1,250 a month default interest since September 1, 1969, while waiting for vendees to close and pay off this mortgage. The equities by now had shifted; the trial judge correctly applied the equities by no longer lending his equity powers to aid the vendees under these changed circumstances.
The judgment directed specific performance and that plaintiffs within 30 days make cash payment:
“ . . . together with the purchase money note and mortgage described in such contract, bearing date of the institution of this suit and payable with interest according to the terms of such contract; provided, that if Defendant [vendor] has not then removed those encumbrances which Plaintiffs do not assume in and by such contract [the $150,000 Home Federal Mortgage], the amount of such note and mortgage shall be reduced by the sum of such encumbrances.”
This language obviously indicates that the amount of the existing mortgage if not paid by vendor (as it was known it could not be) was to be reduced (subtracted) from the first purchase money mortgage required to be given by vendor. (The vendee had offered so to do in its amended complaint.) It is difficult to see how the matter could otherwise be closed. The existing first mortgage had gone into default and of necessity was required to be paid.
At the August 21, 1969, hearing it was also quite clear to vendees’ counsel that it was to be paid off in the following exchange :
“THE COURT:'. . . Now, as I recall it, and I may be mistaken, I asked this gentleman here, ‘Do you expect to pay off the mortgage?’ and my recollection is he said, ‘Yes,’ he did.
“MR. CURRAN: Yes, sir.”
*554 Vendees wanted the court’s language clarified by amending the final judgment and in its order complying with vendees’ request, the court set forth:
“It was stated that Plaintiffs would be expected to discharge the first mortgage now encumbering the property.” [emphasis ours]
This was on September 8, 1969; yet vendees try to convince the judge that they had not understood that they were to do this when it came before the court on September 22, when the time for doing so had expired. It is not surprising that the court could not accept such a contention. Neither can we.
It is difficult to see how much clearer it could be stated that vendees were tó pay the existing mortgage. Yet vendees say, “But, Your Honor, you did not ORDER us to pay it; you only said we would be EXPECTED to pay off the existing mortgage”!
It is the language following this in the order which vendees now seize upon in claiming that they did not know that they were supposed to pay the mortgage. The order states:
“[T]here shall be credited on the amount of said note and mortgage [first purchase money mortgage to vendor] all sums which Plaintiffs are required to pay in discharge of the first mortgage now encumbering the property . . . . ”
This simply comports (by allowing the credit) with the initial sentence in the order that “Plaintiffs would be expected to discharge the first mortgage now encumbering the property.”
Consistent with this same position is the language of the final order dismissing action as follows:
“When plaintiffs brought this suit they committed themselves to take title to the property in question. Thus, they committed themselves to paying off the preexisting mortgage on the property if defendant failed or refused to do so. Otherwise it would be impossible for them to obtain specific performance in accordance with the prayer of their complaint.”
In the Motion to Dismiss, it is set forth as follows:
“2. Pursuant to a timely motion to amend the judgment aforesaid and at a hearing on said motion on the 21st day of Aicgust 1969, the Court orally directed the plaintiffs to discharge a certain existing mortgage in the sum of $150,000 held by the Home Federal Savings & Loan of Hollywood, which mortgage is dated May 26, 1966, and recorded in Official Records Book 1380, Page 272, of the Public Records of Palm Beach County, Florida.” [emphasis ours]
Vendees dispute that the direction was this clear and insist that they should have been expressly and directly ordered by the court to pay the Home Mortgage.
There apparently was no doubt in the trial judge’s mind about what was meant as reflected in the following colloquy on September 19, 1969, upon vendor’s motion to dismiss the cause for vendees' noncompliance :
“THE COURT: ... I intended that the mortgage be paid off, and I am not sure that that can’t be read into this order but maybe it can’t because it certainly' — the order couldn’t possibly be carried out unless it was paid off.”
Then at the hearing on Petition for Rehearing :
“ . . . you were apprised, according to this record, that they weren’t going to pay this mortgage off, that you would be expected to discharge it.
“Now with that knowledge, knowing that’s the only way in God’s world to close this deal, they have you sit there across the table and told you according to this record, that the Plaintiffs would be expected to discharge the first prop-perty [mortgage] on the incumbent property. That was something that you had *555 to contemplate as possibly falling on you, and here is a notification to you that it was falling on you.
* * * * * *
“I think that is about all I had to do, and it looks like to me that in the face of the knowledge, the unequivocal statement here that in order to close this deal, Mr. Plaintiff, you were going to have to pay this mortgage, and when you come down there and put in something that doesn’t anticipate that, or something that can’t possibly be, I don’t know what is the next thing to do, what should happen. Just let it lie there indefinitely, the situation lie there indefinitely, because the motion hadn’t been made to dismiss it? No way to proceed a step further? . . .”
Also revealing is the colloquy between plaintiffs’ (vendees’) counsel and the court at the rehearing:
* * * * * *
“MR. CURRAN: I didn’t know your Honor had directed us to pay it off, and that was my point.
“THE COURT: I didn’t think it was appropriate for me to order you to; I didn’t think it was necessary.
They sat across the table and said this mortgage was to be paid off by you, that is what the record shows.”
* * * * * *
“MR. CURRAN: Then if we weren’t required to do it, my position would be why could you dismiss the action?
“THE COURT: Because you didn’t pay it off. You didn’t create a situation whereby this transaction could possibly be closed. On the contrary you created a situation by which it couldn’t be closed.”
And finally:
“THE COURT: I can’t see that this thing is not like it should be. I think that you had all the opportunity, and the thing that convinces me is that what you did down there [registry of the court] was an idle gesture. Nothing could possibly be done with this transaction with that tender.
“I am going to deny your motion [for rehearing].”
It is apparent that the patient trial judge had afforded vendees every opportunity to close the transaction and had amended his judgment to comply with vendees’ further request and then when there still was noncompliance after 68 days’ time and it appeared that vendees were quibbling with the language but still not complying, the judge felt justified in dismissing the action. We cannot disagree with his exercise of discretion in doing so.
Perhaps it became apparent to the trial judge that vendees had a reason for the delays and for not complying. This is reflected in some of the further colloquy at those two hearings when it was revealed that the Home Mortgage in default was requiring $1,250 per month interest payments by vendor so long as vendees did not act. Also, vendees’ professed “good faith” to proceed and to pay off the mortgage was made contingent upon no appeal being taken.
The record reflects the following:
“MR. CURRAN: . . . But if there is no appeal, I don’t mind telling you what we are going to do. We are going to pay it off, and we won’t fight with you over the extra interest.
“THE COURT: Well, J don’t see why you haven’t paid that mortgage off and taken the land.
“MR. CURRAN: This is our intention if there is no appeal.
“THE COURT: I think you spoke to me one time about being worried about paying this mortgage off and having an appeal taken and having your money tied up.” [emphasis ours]
*556 At another point, the same conditional payment — only “if you don’t appeal” — again takes place in the record as follows:
“MR. HORTON [Counsel for vendor] : Do you want to take it down [accept the deed] and not dispose of this Home Mortgage ?
“MR. CURRAN: We have no objection to paying off the mortgage if you dorit appeal.” [emphasis ours]
One cannot invoke the extraordinary powers of an equity court to require specific performance and then balk at the court’s terms or vacillate with the requirements of the judgment. To do so is to risk the withdrawal of the court’s favorable ruling. To deny a trial court of its discretion in these circumstances is not the place of an appellate tribunal. It unduly restricts the trial court and weakens its authority to administer justice on the trial level.
Protestation by vendees that they did not “know” that they were required to pay off the Home Mortgage is also dispelled by the very instruments involved in which the deed and mortgage that they placed in the registry of the court expressly provided that the tendered instruments were a FIRST purchase money mortgage from vendees to vendor. Of course this could not be a first purchase money mortgage unless the existing Plome Mortgage were paid off. It is clear throughout the transaction that such was the essential ingredient of any closing in this matter. This was the trial judge’s final comment to counsel that nothing could really take place without payment of that mortgage. The court remarked:
“[Addressing Mr. Curran] You haven’t given them a first mortgage and that is what your contract calls for.”
In the Order Dismissing Action, it is recited:
“When plaintiffs brought this suit they committed themselves to take title to the property in question. Thus, they committed themselves to paying off the preexisting mortgage on the property if defendant failed or refused to do so. Otherwise it would be impossible for them to obtain specific performance in accordance with the prayer of their complaint.
“Plaintiffs were informed at the hearing on August 21, 1969, that defendant would not discharge the pre-existing mortgage and that plaintiffs would have to discharge it. Plaintiffs were aware that in meeting any required tender the pre-existing mortgage would have to be taken into account in order to close the transaction.
“Plaintiffs have now tendered only sufficient money into the registry of the Court to meet the down payment fixed in the contract, making no provision for discharging the pre-existing mortgage. Likewise, they have ignored the preexisting mortgage in tendering the purchase money mortgage mentioned in the contract. Obviously, this was a useless and meaningless tender since this procedure makes it impossible to carry out the orders of this Court granting specific performance as prayed for in the complaint.”
The able trial judge was eminently correct. The opinion of the Fourth District Court of Appeal is quashed with instructions to remand the cause to the trial court for reinstatement of the Order Dismissing Action.
It is so ordered.
ROBERTS, C. J., and CARLTON, ADKINS, BOYD and DEKLE, JJ„ concur.
ERVIN, J., dissents with opinion.
CREWS, Circuit Judge, dissents and concurs with ERVIN, J.

. Gus’ Baths v. Liglitbown, 101 Fla. 1205, 135 So. 300 (1931); Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929); Jacobs v. Automotive Repair Center, Inc., 137 So.2d 263 (1st DC A Fla.1962).

. Gaskins v. Byrd, 66 Fla. 432, 63 So. 824 (1913).